UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARTICE BERRY,

       Plaintiff,

v.                                     Case No. 06-10713
                                     Hon. Sean F. Cox

CITY OF PONTIAC,

       Defendant.

_____

**OPINION AND ORDER**

This matter is before the Court on Defendant's Motion for summary judgment. Both parties fully briefed the issues and a hearing was held January 26, 2007. For the following reasons, the Court **GRANTS** Defendant's Motion for summary judgment.

**I.    BACKGROUND**

This action arises out of the suspension and termination of Plaintiff's employment with Defendant as a police officer.

Plaintiff began work as a police officer for the Defendant in May 2002. Beginning in May 2003, Plaintiff was the subject of several disciplinary actions for violations of the Pontiac Manual of Conduct ("manual"). By November 2004, Plaintiff had four reprimands and two 10 hour suspensions for violations of the manual.

In November 2004, Plaintiff's ex-girlfriend, Juanita Carattini, and her current boyfriend, Antawian Ball, filed citizen's complaints against Plaintiff. Carattini and Ball both alleged

1

Plaintiff was harassing them.  It is undisputed that in November 2004, Plaintiff and his partner, Officer James Wilkins, conducted a traffic stop on Ball.  Ball was cited for speeding, driving on a suspended license, and for having a loud muffler.  During the traffic stop, a call regarding a robbery went out over the police radio.  Plaintiff and Wilkins chose to continue with the traffic stop.  The dispatcher sent other available units to the call and did not specifically request Plaintiff and Wilkins to respond.

On a separate occasion, Carattini alleges that Plaintiff harassed her by pulling her over and giving her a traffic ticket for driving on a suspended license.  She claims her license was suspended because Plaintiff failed to "take care of" a ticket that he assured her he would take care of while they were dating.

As a result of Carattini and Ball's citizen's complaints, Defendant began an investigation. Lieutenant Charles Herring conducted the investigation.  Both Lt. Herring and Plaintiff are African-American.  On December 13, 2004, Lt. Herring questioned Plaintiff.  Allegedly, Plaintiff raised his voice and used abusive language towards Lt. Herring.  Plaintiff was accused of violating Section 1.01 "Responsibility of Member" and Section 3.01 "Assaultive and Abusive Language" for his actions regarding Lt. Herring.  On December 15, 2004, a Professional Conduct Report ("PCR") was generated and pursuant to Professional Standards Division ("PSD") 2004-228, Plaintiff was given a 160 hour suspension.  He served the suspension from December 17, 2004 to January 3, 2005.

During the course of Lt. Herring's investigation, Defendant claims it learned of several violations of the manual.  Plaintiff, who shared an apartment with his partner, Wilkins, allegedly received reduced rent on the basis of his status as a police officer.  It is unclear what service

2

Plaintiff allegedly performed in return for reduced rent.  In PSD 2004-219, Plaintiff was accused

of violating numerous provisions of the manual, including:

### 15.01  Neglect of Duty

- Officer Berry chose to ignore and delay response to a life threatening felony crime in progress, electing to continue a routine traffic violater stop and in so doing placing fellow members and citizens of the community at higher potential risk in conflict with his training, experience and Manual of Conduct sections 1.08; 11.01 and Chapter 2-G.

### 17.01  Conduct Unbecoming an Officer

- Officer Berry violated this section when he promised to use the color of his authority to resolve a Clarkston PD traffic ticket for Juanita Caranitti, ultimately not resolved and the catalyst for a license suspension, he then used this suspension from his inaction as a premise to stop and issue Juanita Carattini a traffic citation for Driving While Suspended.
- Officer Berry violated this section when he inappropriately used his authority to obtain information in his official capacity from the traffic violator stop of Juanita Carattini and convert it to personal use in his private civil litigation case filed for money damages.
- Officer Berry violated this section when he deviated from policy controlling access and intended use of inquiries and information on Law Enforcement Information Networks.
- Officer Berry violated this section when he used his authority and position to target, stop and ticket Antawian Ball.
- Officer Berry violated this section when he chose to ignore the needs of other members of the department and citizens by delaying his emergency response to a life threatening felony in progress.
- Officer Berry violated this section when he was deceptive and untruthful during the course of this internal investigation, full cooperation is a condition of employment.
- Officer Berry violated this section when he failed to cooperate fully with the outside criminal investigation of his access to confidential Law Enforcement Information Networks.
- Officer Berry violated this section when he used his authority and position to gain preference and compensation from Auburn Hgts. Apartment management.

### 17.03  Truthfulness

- Officer Berry violated this section by failing to respond truthfully during

3

the conduct of the internal investigation.

18.01 **Abuse of Position**

- Officer Berry violated this section by obtaining compensation for his work abilities only affordable through the color of his authority as a Pontiac Police Officer with the Auburn Hgts. Apartments.
- Officer Berry violated this section by using his authority to convert personal information from Ms. Carattini obtained on an official traffic violator stop to further his personal civil lawsuit action against Ms. Carattini.

18.09 **Not to Furnish Bail or Suggest Bondsman or Attorney**

- Officer Berry violated this section by furnishing bond for the release of Juanita Carattini after full custody arrest by the Waterford Township Police Department.

The punishment for the violations listed in PSD 2004-219 was termination of Plaintiff's employment on March 14, 2005. Plaintiff's Caucasian partner, Wilkins, was not disciplined for the alleged violations he participated in.

On February 17, 2006, Plaintiff filed a Complaint alleging: (1) race discrimination in violation of Title VII; and (2) race discrimination in violation of 42 USC §1981. Plaintiff seeks compensatory and punitive damages, as well as costs and attorney's fees. On October 31, 2006, Defendant filed a Motion for summary judgment on both of Plaintiff's claims.

## II.    STANDARD OF REVIEW

Under Fed. R. Civ. P 56(c), summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995). A fact is "material" and precludes a grant of summary judgment if "proof of that fact would have

4

[the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). The court must view the evidence in the light most favorable to the nonmoving party and it must also draw all reasonable inferences in the nonmoving party's favor. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

## IV.   ANALYSIS

### A.   Title VII

"Title VII makes it unlawful for an employer to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." *Singfield v. Akron Metropolitan Housing Authority*, 389 F.3d 555, 561 (6th Cir. 2004)(citing 42 USC §§2000e-2(a)(1)).

The parties agree that Plaintiff must establish his case through circumstantial evidence using the *McDonnell Douglas*[1] framework. [Motion, p.15; Response, p.12-13]. The *McDonnell Douglas* framework requires that the plaintiff establish a prima facie case. *Wright v. Murray Guard, Inc*., 455 F.3d 702, 706 (6th Cir. 2006). "Once a prima facie case has been shown, the plaintiff is entitled to a presumption that the defendant discriminated against him or her in violation of Title VII." *Id*. "The defendant then bears the burden of production to put forth a legitimate nondiscriminatory reason for the complained of adverse treatment." *Id*. If the defendant articulates a legitimate nondiscriminatory reason, the presumption of discrimination falls away. *Id*. at 706-707. The burden shifts back to the plaintiff to show that the defendant's

---

[1]*McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973).

5

legitimate nondiscriminatory reason is a pretext for unlawful discrimination.  *Id*. at 707.

### 1.    Prima Facie Case

To demonstrate a prima facie case of race discrimination, Plaintiff must show that: (1) he was a member of a protected class; (2) he suffered an adverse employment action; (3) he was qualified for the position; (4) he was treated differently than similarly-situated, non-protected employees.  *Wright*, 455 F.3d at 707.  There is no dispute that Plaintiff was a member of a protected class because he is African-American; and he suffered an adverse employment action when he was suspended for 160 hours and later terminated.  The parties dispute the remaining two prongs.

### a.    Was Plaintiff Qualified for the Position?

Defendant argues that Plaintiff was not qualified for the position because several disciplinary actions were brought against him.  Plaintiff has an associates degree and graduated from Macomb Community College Police Academy. [Response, p.8].  He was qualified to be a police officer.  Whether Plaintiff followed the rules set forth by Defendant is not relevant for purposes of this element.

### b.    Was Plaintiff Treated Differently Than Similarly Situated, Non-Protected Employees?

The parties disagree on the standard to be applied to determine whether an individual is "similarly situated" for purposes of establishing a prima facie case.

The Sixth Circuit recently articulated the standard for determining whether an individual is similarly situated for purposes of disciplinary actions.  "[T]o establish that an employee is an appropriate comparator, the plaintiff must demonstrate that he or she is similarly situated to the

claimed comparator in all relevant respects." *Wright*, 455 F.3d at 710 (citing *Ercegovich v. Goodyear Tire & Rubber Company*, 154 F.3d 344, 353 (6th Cir. 1998)).[2] "In the disciplinary context, we have held that to be found similarly situated, the plaintiff and his proposed comparator must have engaged in acts of comparable seriousness." *Id*. (citation omitted). Courts look to several factors to make this assessment, such as whether the individuals: (1) have dealt with the same supervisor; (2) have been subject to the same standards; and (3) have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it. *Id*. When the factors are not relevant, they need not be considered. *Id*. "[T]o determine whether two individuals are similarly situated with regard to discipline, we make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the proposed comparable employee." *Id*.

### i.      PCR 2004-228 - Suspension

Plaintiff identifies two individuals from a non-protected class that he contends are similarly situated for purposes of his violation for Assaultive and Abusive Language, but were given less severe discipline.

### Officer Miller Dao

Plaintiff claims Officer Miller Dao was given less severe discipline for violations of the manual that were of comparable seriousness to Plaintiff's. As of September 2004, Dao had four disciplinary actions against him, the most serious penalty he received was a 10 day suspension. On March 19, 2005, Dao was accused of violating 1.02 Responsibility of Member, 4.01

---

[2]This is the standard asserted by Plaintiff.

7

Departmental Records, 17.01 Conduct Unbecoming an Officer, and 17.03 Truthfulness.  Dao

received a 20 hour suspension.  On March 21, 2005, he was accused of violation of 3.01 Lawful

Order.  He received another 20 hour suspension. [Response p.15, Exhibit 6].

      Dao's violations stem from a call from a citizen that he had a game that belonged to her

son.  Dao had responded to a domestic violence call at the citizen's home previously.  Dao

acknowledged that the game was in the car he was driving the night that he responded to the

citizen's home.  On March 19, 2005, Sergeant Kathleen Mickens instructed Dao to return the

game.  On March 21, 2005, Sgt. Mickens overheard Dao asking another officer to retrieve the

game from the vehicle and realized that Dao had not returned the game on March 19, 2005, as he

was instructed.

      Defendant claims that Dao's violations are not comparable to Plaintiff because they did

not deal with the same supervisor, and there were mitigating factors that distinguish Plaintiff and

Dao.  Defendant points to Plaintiff and Dao's disciplinary histories.  At the time of PCR 2004-

228, Plaintiff had four reprimands and two 10 hour suspensions.  At the time of Dao's March

2005 violations, he had three reprimands and one 10 hour suspension.

      Plaintiff and Dao's length of suspension (the adverse employment action at issue) were

both decided by Chief Rollie Gackstetter.  It is undisputed that both Plaintiff and Dao were

subject to the same standards.  The only remaining issue is whether Plaintiff and Dao engaged in

conduct of comparable seriousness "without such differentiating or mitigating circumstances that

would distinguish their conduct or the employer's treatment of them for it."  *Wright*, *supra*.

      Plaintiff and Dao did not engage in conduct of comparable seriousness.  Plaintiff used

abusive language and threatening gestures to a superior officer while he was being investigated

8

for harassment of two citizens.  Dao did not comply promptly with an order of a superior officer. Plaintiff and Dao's conduct was not the same and the culpability for the violation was not the same.  There are further differentiating or mitigating circumstances between Plaintiff and Dao as demonstrated by the disparity of their disciplinary records at the time of the allegedly comparable suspensions.  Plaintiff had one more reprimand and 10 hour suspension than Dao.

For purposes of PCR 2004-228, Dao was not similarly situated.

### Detective Steven Wittebort

Plaintiff's argument that Detective Steven Wittebort is similarly situated is without merit. In January 2006, Wittebort violated 3.03 Assaultive and Abusive Language and 8.01 Conduct and Courtesy when he used profanity towards a Sergeant.  Wittebort was given an 80 hour suspension.  However, Wittebort was under a different police chief than when Plaintiff was employed by Defendant.  Further, at the time of his violation, Wittebort had only one reprimand on his record.  Thus, Wittebort was not similarly situated to Plaintiff.

### ii.      PCR 2004-219 - Termination

With respect to Plaintiff's termination, he contends that his partner, Wilkins, was similarly situated but was not disciplined at all.

Plaintiff argues that Wilkins committed some of the exact same violations that Plaintiff was terminated for, but he was not disciplined at all.  Plaintiff notes that Wilkins also violated 15.01 Neglect of Duty and 17.01 Conduct Unbecoming an Officer by delaying his response to the robbery call in order to complete the traffic stop of Ball.  Moreover, Wilkins was Plaintiff's roommate at the Auburn Heights Apartments, he alleges they leased the apartment together. Wilkins was not disciplined for choosing to continue with the traffic stop rather than respond to

the robbery call, or for allegedly using his authority and position to gain preference and compensation from Auburn Heights Apartments.

Defendant claims that Wilkins is not similarly situated because Plaintiff had many more infractions that were not applicable to Wilkins.  Further, Defendant argues that the violations were not of comparable seriousness because Plaintiff's motivation for the violations stemmed from citizen harassment, while Wilkins claimed he was unaware of Plaintiff's relationship with Ball at the time of the traffic stop.  Defendant also points out that at the time of the termination, the evidence it had was that only Plaintiff acted as a police liaison with the Auburn Heights Apartments. [Exhibit K].  Lastly, Defendant contends the termination decision was based on the totality of the circumstances, which included Plaintiff's motivation for the violations, the extent of his violations, and his prior disciplinary record.

It is undisputed that Plaintiff and Wilkins had the same supervisor and were subject to the same standards.  But, their conduct was not of comparable seriousness.  First, Plaintiff was accused of many more violations than he claims Wilkins committed.  All of the violations were considered in the decision to terminate Plaintiff, not just the ones involving Wilkins. Second, as Defendant notes, while Wilkins technically violated the manual too, Plaintiff's alleged violations stemmed from his attempts to harass Carattini and Ball.  There is no evidence that Wilkins knew that Plaintiff was harassing Ball, or that he intended to harass Ball via the traffic stop.  Plaintiff and Wilkins are not similarly situated because although Wilkins committed some of the violations for which Plaintiff was terminated, there were mitigating circumstances that made the conduct not of comparable seriousness.

Plaintiff also offered at the hearing that he was similarly situated to Dao for purposes of

10

his termination.  As discussed above, Dao and Plaintiff are not similarly situated.

Plaintiff does not offer any other evidence that he was treated differently than a similarly situated non-protected employee.  Plaintiff fails to establish a prima facie case of racial discrimination in his 160 hour suspension or his termination.

### B.     42 USC §1981

"The elements of a prima facie case as well as the allocations of the burden of proof are the same for employment claims stemming from Title VII and §1981."  *Noble v. Brinker International, Inc*., 391 F.3d 715, 720 (6th Cir. 2004).

Thus, Plaintiff likewise fails to establish a genuine issue of material fact regarding discrimination pursuant to §1981.

### V.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for summary judgment.

**IT IS SO ORDERED.**

**S/Sean F. Cox**_____
**Sean F. Cox**
**United States District Judge**

**Dated:  February 12, 2007**

**I hereby certify that a copy of the foregoing document was served upon counsel of record on February 12, 2007, by electronic and/or ordinary mail.**

**S/Jennifer Hernandez**_____
**Case Manager**

11